**Walter C. PHILLIPS, Regional Director of the Tenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner**

v.

**BURLINGTON INDUSTRIES, INC., Respondent.**

**Civ. A. No. 1387.**

United States District Court
N. D. Georgia,
Rome Division.

Nov. 17, 1961.

590

Walter C. Phillips, Regional Director, Atlanta, Ga., and Julius G. Serot, Deputy Asst., Gen. Counsel, Washington, D. C., for plaintiff.

Frank A. Constangy and Fred W. Elarbee, Jr., Atlanta, Ga., for defendant.

HOOPER, Chief Judge.

This action is brought by a Regional Director of the National Labor Relations Board on behalf of said Board and the motion to dismiss the same as not being brought by the Board itself is overruled. If improperly brought it could easily be amended. It is brought in behalf of the employees of Burlington Industries, Inc. in an effort to enjoin said defendant from liquidating its Rossville plant, the employees having at an election held for that purpose selected the Allied Industrial Workers of America (hereinafter called AIW) as their representative for collective bargaining.

The complaint was presented to the Court and filed at 9:00 o'clock A.M. on November 14th while the Court was holding a session in Rome. Counsel for defendant had been notified at 4:00 o'clock P.M. on the previous day and was present with defensive affidavit and citation of authorities, and consequently the Court held a plenary hearing on the matter lasting some three hours and neither party has requested the privilege of sub-

mitting further evidence or additional authorities.

There is little if any material controversy as to the facts in the case, and the facts stated below are taken for the most part from the complaint itself.

On August 2, 1961 International Union, Allied Industrial Workers of America, AFL, CIO, at an election held was selected as the collective bargaining representative of defendant's employees at the Rossville plant. The defendant employer undoubtedly was opposed to the unionization of its plant; plaintiff alleges in full unfair labor practices charged against the defendant prior to the election, but those charges have been made the subject matter of proceedings before the Board against the employer filed October 12, 1961, and for purposes of this decision the charges may even be conceded to be well founded.

The Union was certified on August 10th and at its request there was a meeting held on September 5th between representatives of the Union and the Company. At that meeting the Company announced that it had decided to sell the Rossville plant if possible, and if not to liquidate the same. A notice to that effect was posted on the premises by the defendant on September 25th. On October 3rd representatives of each party again met, at which time the Company gave to the Union a proposed schedule of steps in its liquidation. As a matter of fact, at that time the liquidation was already in progress, the Company already having discharged one hundred and fifty employees prior to October 3rd. It should be noted that this meeting was held one month and eleven days prior to the filing of this application for injunction and the suit was not filed until approximately fifty days after the notice of liquidation posted on September 25th.

The liquidation of the Company has been proceeding since September 25th to November 14th, the day of the hearing, and on the latter date it appeared that all of the employees had gradually been discharged, only some six hundred then remaining on the payroll. It also appears without dispute that no new orders have been received at the plant since September 25th, but all activities since that date consist of completing all orders then in progress.

It cannot be said from the record that the decision by the defendant to close the Rossville plant was not influenced at least in part by defendant's necessity to recognize the Union. It is undisputed however, that the plant was losing considerable sums of money. For the fiscal year ending September 30, 1960 losses were $3,050,000.00, and for the fiscal year ending September 30, 1961 its losses were $4,850,000.00. Its payroll was approximately $5,000,000.00 per year. In the quarter ending September 30, 1961 the total loss was $1,062,000.00, roughly $350,000.00 more than the loss in the preceding quarter. Affidavit by E. H. Hines, Jr., President and General Manager of defendant's mill at Rossville indicates that the machinery and facilities at the plant while not completely obsolete are less modern than machinery in many other plants and that the dollar value of sales of goods produced in men's wear division in Rossville dropped from approximately $25,000,000.00 in the fiscal year of 1957 to $9,000,000.00 in the fiscal year ending September, 1961.

While President Hines swears that the decision to close defendant's plant "was not made because any of our employees exercised any of their rights under the National Labor Relations Act [29 U.S.C. A. § 151 et seq.]", a decision on that issue is not necessary for reasons stated below:

■ (1) As pointed out below the controlling principle of law in this case is this, that management has the right to liquidate and go out of business without the necessity of bargaining with its employees concerning its liquidation. There are several preliminary questions however, which might profitably be discussed before reaching that principle of law. The first one concerns the right of the employer to make changes in the internal operations of his business despite the fact that his plant is unionized, and even de-

spite the fact that the employer is bound by collective bargaining agreement with his employees.

■ As stated by the Court of Appeals for the Second Judicial Circuit in the case of National Labor Relations Board v. Rapid Bindery, Inc., 2 Cir., 293 F.2d 170, at p. 174:

> "In those situations where a change or discontinuance of business operations is dictated by sound financial or economic reasons the courts have refused to find that § 8(a) (3) has been violated even though the employer action may have been accelerated by union activity."

■ If in fact the defendant employer in this case was opposed to unionization of his plant and if in fact it was actually losing money, the mere fact if shown that the unionization of its plant with its consequent increase in cost was a material factor in its decision to liquidate would not affect the case. As stated in Jays Foods, Inc. v. National Labor Relations Board (7 Cir., 1961), 292 F.2d 317, p. 320:

> "An employer has a right to consider objectively and independently the economic impact of unionization of his shop and to manage his business accordingly. Fundamentally, if he makes a change in operation because of reasonably anticipated increased costs, regardless of whether they are caused by or contributed to by the advent of a union or by some other factor, his action does not constitute discrimination within the provisions of section 8(a) (1), (3) and (5) of the Act."

■ (2) The vital and controlling question of law raised in this case however, is whether or not an employer whose plant has been unionized, and is losing money, can be required to bargain with the Union concerning the liquidation and, pending the negotiations, be required to continue operations.

Over a long period of time National Labor Relations Board itself has been committed to the principle that the employer has the right to liquidate his business without collective bargaining as a prerequisite.

Its most recent pronouncement upon this question, as far as this Court is aware, was made in the case of National Labor Relations Board v. Fibreboard Paper Products Corp., 130 N.L.R.B., 161, 47 L.R.R.M., 1547, 1549, decided on March 27, 1961. In that case the Board was concerned with the decision of an employer to contract out its maintenance work even though the effect of the contract would be the discharge of the unit represented by the Union with which the employer had a collective bargaining agreement. The Board explained fully the difference between the obligation of an employer on the one hand to bargain with employees while the relationship continued and on the other hand (as here) after it had terminated. The Board there stated that it rejected

> "the broad proposition, urged upon us by the General Counsel, that a management decision to cease one phase of its operations solely for economic reasons is in and of itself a mandatory subject of bargaining,"

stating:

> "Indeed, not only is this broad proposition without supporting precedent, but it is in fact contrary to existing precedent."

It was further pointed out therein that the statutory obligation imposed upon employers by § 8(a) (5) concerned the question

> "whether, as here, a termination will occur."

It was pointed out that the inference was not warranted

> "that the Congress intended to compel bargaining concerning basic management decisions, such as here, and to what extent to risk capital and managerial effort."

The right to bargain however, on all matters concerning the matter of termination was still upheld.

It was pointed out in Jays Foods, Inc. v. National Labor Relations Board, supra, 292 F.2d 317, at p. 320, that the Board's decision in that case was clearly inconsistent with its decision in the case of Fibreboard Paper Products Corp. just cited, and it might be pointed out that the Board's position in the instant case is also inconsistent therewith.

This Court, however, does not feel justified in ignoring a number of rulings heretofore made by the National Labor Relations Board and decisions by a number of Circuit Courts of Appeal upholding the same until and unless some higher court has signified its approval to such reversal.

It is not necessary to a decision of the instant case to rule that an employer may, only on account of the unionization of his plant, close the same. There are decisions however, indicating that he has the right to do so, regardless of motive. In National Labor Relations Board v. Missouri Transit Company, 250 F.2d 261 (8 Cir.) there is cited the case of National Labor Relations Board v. New Madrid Manufacturing Company (8 Cir.), 215 F.2d 908, and the following quotation given from page 914 of that case:

"But none of this can be taken to mean that an employer does not have the absolute right, at all times, to permanently close and go out of business, or to actually dispose of his business to another, for whatever reason he may choose, whether union animosity or anything else, and without his being thereby left subject to a remedial liability under the Labor Management Relations Act for such unfair labor practices as he may have committed in the enterprise, except up to the time that such actual and permanent closing or true and bona fide change in ownership has occurred."

Emphasis should be added however, to the exception which preserves the right of the employees for redress as to all wages "up to the time that such actual and permanent closing * * * has occurred." In the proceedings now pending before the Board all rights of the employees may be preserved, including all rights and remedies as have been accorded by the Board in similar situations and upheld by the courts.

(3) Regardless of all that has gone before this does not seem a proper case for granting of an injunction to prevent liquidation. The plaintiff and the Union each had notice of the proposed liquidation on September 25, 1961 but did not bring this application for injunction until November 14th, and during this period of approximately fifty days most of the pending orders at said plant have been completed, all employees discharged except about six hundred, and liquidation will be completed in a short time.

As it appears without dispute that defendant working in a normal manner has been losing considerable money, forcing it to continue with a small number of employees and with no new orders would not be justified, nor would it be of any benefit to these unfortunate laborers who have been discharged or may be discharged by defendant. The unfortunate consequences of the liquidation of this mill are no doubt correctly pictured by the plaintiff in the Complaint. The employees as stated, will no doubt be afforded all the rights granted them by statute in the pending proceedings before the Board, but this Court cannot as the law now stands, by means of an injunction force the defendant to continue to operate its plant. The Court has no authority under the law to require the restoration of some eleven hundred employees already discharged and they could receive no benefit from its continued operation. It therefore seems to this Court that to grant the injunction prayed for would therefore not only be without legal precedent, but futile.

The temporary injunction is therefore denied.